***********
Upon review of the competent evidence of record with respect to the errors assigned and in consideration of the Opinions from the Court of Appeals, the Full Commission finds good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
An Industrial Commission Form 60, Employer's Admission of Employee's Right to Compensation Pursuant to G.S. § 97-18(b), filed by defendant on 9 September 1997 is incorporated herein by reference.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, at the hearing on 24 February 1998 and by post-hearing agreement as:
 STIPULATIONS
1. Plaintiff's medical records from Frye Regional Medical Center, Hickory Orthopaedic Center, Hart Industrial Clinic, Catawba Orthopaedic Specialists, Greystone Women's Care and Dr. Beard are admitted into evidence.
2. An Industrial Commission Form 22 Statement of Days Worked and Earnings of Injured Employee, marked as Stipulated Exhibit Number Two, is admitted into evidence.
3. A letter, dated 1 July 1997, from defendant's servicing agent to plaintiff's counsel is admitted into evidence.
4. Plaintiff and defendant contributed equally to the fund from which plaintiff has received disability benefits.
 ***********
In accordance with the directive of the North Carolina Court of Appeals, and based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty years old and had a ninth grade education. Plaintiff began working as a sewer for defendant in November 1969 and continued working in that capacity throughout her employment with defendant.
2. In April 1997, plaintiff reported numbness in both of her hands and left shoulder to her gynecologist, Paul Caporossi, M.D. Prior to this date, the plaintiff had not reported any problems with her hands or shoulder to any representatives of defendant. Dr. Caporossi referred plaintiff to John L. dePerczel, M.D., a general orthopedic surgeon.
3. Prior to the time plaintiff saw Dr. dePerczel, she reported to her lead person, Patsy Martin, that she was having difficulty with her hands and was going to see a physician. Plaintiff also told her supervisor, Larry Kirby, that she was having difficulties and he directed her to defendant's Director of Human Resources, Anne Story. Neither Mr. Kirby nor Ms. Martin directed plaintiff to seek treatment from Dr. dePerczel.
4. Ms. Story informed plaintiff that if her condition was caused by her work, it would be necessary for her to seek treatment from a physician approved by defendant. Ms. Story at no time approved any treatment performed by Dr. dePerczel.
5. On 6 May 1997, Dr. dePerczel examined plaintiff and diagnosed bilateral carpal tunnel syndrome. Dr. dePerczel recommended conservative treatment, including the use of braces on plaintiff's wrists, but also considered surgery as a future possibility.
6. Upon learning that plaintiff's condition was caused by her work, defendant attempted to direct plaintiff to appropriate medical treatment. On 13 May 1997, plaintiff presented to Robert Hart, M.D., at the direction of defendant. Dr. Hart had experience treating individuals with injuries caused by their employment with defendant. Upon examination, Dr. Hart determined that plaintiff had bilateral tendonitis and possible carpal tunnel syndrome and he placed her on light duty work with restrictions of reduced repetitive motion. Defendant provided plaintiff with suitable light duty work, pairing tickets and inspecting fringe on pillows.
7. Plaintiff returned to Dr. Hart on several occasions in May 1997 and conservative treatment, including job modification, was continued. Nerve conduction studies that were performed on 22 May 1997 indicated that plaintiff had bilateral carpal tunnel syndrome, her right side being worse than her left. Plaintiff was right hand dominant.
8. On 3 June 1997, plaintiff returned to Eric Hart, M.D., who practiced with Dr. Robert Hart. Dr. Eric Hart referred plaintiff to Carl M. Nicks, M.D., for a surgical evaluation. Dr. Eric Hart chose Dr. Nicks because he believed Dr. Nicks possessed a good understanding of the management and treatment of hand injuries, a common sense approach to workers' compensation injuries, and a willingness to communicate with the referring physician, employer and patient.
9. On 4 June 1997, plaintiff presented to Dr. Nicks for examination, which was approved by defendant. Dr. Nicks diagnosed her with bilateral carpal tunnel syndrome, right greater than left, and recommended surgical treatment consisting of carpal tunnel releases. Dr. Nicks scheduled plaintiff for surgery for 12 June 1997.
10. On 9 June 1997, plaintiff filed an Industrial Commission Form 18 Notice of Accident to Employer stating that she had contracted bilateral carpal tunnel syndrome as a result of her work as a sewer for defendant. By that date, defendant had already informed plaintiff that it would accept liability for her workers' compensation claim and would pay for and direct her medical treatment.
11. On 10 June 1997, plaintiff canceled the surgery that was scheduled with Dr. Nicks. Upon learning of the cancellation, Ms. Story contacted plaintiff and was informed by plaintiff that she wanted to be treated by Dr. dePerczel. Ms. Story again informed plaintiff that because defendant had accepted her workers' compensation claim as compensable, only authorized treatment would be paid for by defendant. Ms. Story specifically informed plaintiff that defendant would not pay for any treatment performed by Dr. dePerczel, and that it had only authorized treatment by Dr. Nicks.
12. On 1 July 1997, defendant wrote a letter to plaintiff's counsel in which it memorialized its contention that because it had accepted plaintiff's worker's compensation claim, it had the right to direct her medical treatment and that treatment by Dr. Nicks was authorized and treatment by Dr. dePerczel was not authorized. A copy of this letter was mailed to the Industrial Commission.
13. Although plaintiff was aware that defendant was refusing to pay for treatment by Dr. dePerczel, she chose to proceed with surgery on 7 July 1997. On that date, Dr. dePerczel performed a right carpal tunnel release and on 13 August 1997, he performed a left carpal tunnel release.
14. Dr. dePerczel removed plaintiff from work beginning 9 July 1997 and, at the time of the hearing before the Deputy Commissioner, had not released her to return to work. After 9 July 1997, and at least through the 24 February 1998 deputy commissioner hearing, plaintiff did not returned to work in any capacity for any employer.
15. Dr. Nicks has performed thousands of carpal tunnel release surgeries. Based upon his professional experience and his personal examination of plaintiff, Dr. Nicks recommended that she undergo carpal tunnel release on her right wrist and the same surgery on the left wrist about three to four weeks later. Under Dr. Nick's care, plaintiff would have remained out of work for two days after each surgery and returned to work with restrictions of one-handed work for three to four weeks. At the most, plaintiff would have missed an entire week of work if her work environment was dirty because her wound could have been soiled or damaged. Dr. Nicks, however, did not see plaintiff after her surgeries and thereby the Court of Appeals has determined that his testimony, under the facts of this case, is not competent evidence that plaintiff could have returned to work after her surgery.
16. At no time did plaintiff's condition present an emergency situation. Furthermore, at the time she sought unauthorized treatment in the form of surgical procedures performed by Dr. dePerczel, defendant had accepted her claim and was providing reasonable and competent medical care. Plaintiff did not have good cause to refuse treatment with Dr. Nicks and seek the services of Dr. dePerczel.
17. An Industrial Commission Form 33 Request for Hearing was filed by plaintiff and received by the Commission on 11 July 1997, subsequent to the initial surgery performed by Dr. dePerczel.
18. As of October 1997, plaintiff began experiencing conditions and symptoms unrelated to her employment. On 14 October 1997, plaintiff was examined by Dr. Baird of Catawba Podiatry for pain in her heels, feet and legs. Dr. Baird determined that plaintiff had heel spurs and plantar fasciitis. He advised her to wear orthopedic shoes, take medication and rest her feet. Plaintiff returned to Dr. Baird on 8 January 1998 with complaints of persistent of heel pain and leg pain. Dr. Baird then diagnosed fibromatosis and advised plaintiff to use a wheelchair. At the time of the hearing on 24 February 1998, plaintiff was still experiencing some difficulties with her legs and feet. These conditions were not caused or aggravated by her employment with defendant.
19. On 15 January 1995, plaintiff returned to Dr. dePerczel complaining of plantar fasciitis and shoulder pain. She returned on 25 February 1998, at which time her left shoulder pain was causing numbness in her arm and spasms in her neck. Dr. dePerczel ordered an MRI, which showed that plaintiff had no cervical nerve root entrapment, no disc herniation and no impingement. As of 5 March 1998, plaintiff's symptoms had spread to include left leg numbness and tingling as well as soreness in her jaw and elbows. Dr. dePerczel diagnosed chronic myofasciitis in her neck, shoulders and back as well as possible fibromyalgia for which he prescribed medication. These conditions were not caused or aggravated by her employment with defendant.
20. Although Dr. dePerczel is not an authorized physician, he is the only physician to have seen plaintiff after the surgery to each of her hands. Dr. dePerczel opined that plaintiff could not return to work in her former employment based on the post-surgical condition of her hands, as well as unrelated conditions including complaints of pain in her back and knee, and unrelated fibromyalgia. Dr. dePerczel testified that plaintiff could not return to her former employment. He, however, did not testify that plaintiff could not perform any type of work and testified, "I'm sure there would be some form of employment that she could do with her hands." Dr. dePerczel, based on the representation of plaintiff that there was no other work available, did not perform a functional capacity evaluation or other testing that he felt would be appropriate to determine the type of work that plaintiff was capable of perform and did not advise defendants that plaintiff could return to work.
21. Contrary to the representations made by plaintiff to Dr. dePerczel that no other work was available, Ann Story, the human resource manager for defendant testified that defendant had light duty work available and that they had worked with Dr. Hart with work restrictions that limited the use of hands and would have accommodated plaintiff if work restrictions were provided. Larry Kirby also testified that he was plaintiff's supervisor and that pursuant to Dr. Hart's pre-surgery restriction that plaintiff was not to perform repetitive or strenuous activity with her hands, defendant had positions available for plaintiff, including matching production tickets, filling slip covers, and other activities.
22. Based on a totality of the competent evidence, and particularly in light of Dr. dePerczel's testimony that there are jobs that plaintiff could perform and plaintiff's medical records, the greater weight of the evidence fails to establish that plaintiff was totally disabled from all employment on or after 15 January 1998 when Dr. dePerczel indicated that plaintiff could not return to her former employment, however, placed her on a prn schedule for treatment. The Commission notes that the February and March appointments with Dr. dePerczel centered on unrelated medical problems. Plaintiff has not presented any evidence that she could not work in any capacity, or that she would have diminished earnings because she could not perform her prior employment. Therefore, plaintiff has not established disability after 15 January 1998 through the time period of the medical deposition of Dr. dePerczel that was taken on 20 April 1998.
23. Plaintiff's average weekly wage was $378.21, yielding a compensation rate of $252.26.
24. Based on the stipulation of the parties, and based on the record of this case, the Full Commission declines to opine on plaintiff's status after 20 April 1998, and remands this case to a deputy commissioner to receive evidence and enter an Opinion and Award on plaintiff's entitlement to benefits pursuant to Sections 97-29, -30, and/or 31 of the Act.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage was $378.21, yielding a compensation rate of $252.26. G.S. § 97-2(5).
2. Plaintiff's condition and need for surgery did not present an emergency situation and, at the time she sought unauthorized treatment from Dr. dePerczel, defendant had accepted her claim and was providing seasonable and competent medical care. Defendant had the right to select competent physicians to treat plaintiff's injury. Plaintiff did not have good cause to refuse this treatment and seek the services of Dr. dePerczel. Therefore, defendant is not responsible for payment of any of the medical expenses associated with the unauthorized treatment provided to plaintiff by Dr. dePerczel. G.S. § 97-25; Schofield v. Tea Co.,299 N.C. 582, 264 S.E.2d 56 (1980). The Court of Appeals has already found that this conclusion of law is final and that plaintiff waived any error, if any, by failing to brief the issue before the Court of Appeals.
3. Plaintiff was totally disabled from work from 9 July 1997 through 15 January 1998. G.S. § 97-29. This is a Form 60 case and plaintiff has the burden to prove disability. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001). In Russell v. Lowes,108 N.C. App. 762, 425 S.E.2d 454 (1993), the Court of Appeals explained:
 The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982). The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment, Peoples, 316 N.C. at 443, 342 S.E.2d at 809; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment, id. at 444, 442 S.E.2d at 809; 1C Arthur Larson, The Law of Workmen's Compensation § 57.61(d) (1992); (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment, Peoples, 316 N.C. at 444, 342 S.E.2d at 809; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. *766 Tyndall v. Walter Kidde Co., 102 N.C. App. 726, 730, 403 S.E.2d 548, 550, disc. rev. denied, 329 N.C. 505, 407 S.E.2d 553
(1991).
Plaintiff has established through the testimony of Dr. dePerczel that she could not return to work in her former position, however, she has not established that she was unsuccessful in efforts to find work that she could perform, that searching for work would have been futile, or that she has earned wages at less than her pre-injury wage. Therefore, plaintiff has not established entitlement to Section 97-29 or 97-30 benefits for the period from 16 January 1998 through the deposition of Dr. dePerczel on 20 April 1998. Pursuant to the agreement of the parties, the Commission remands this action to a deputy commissioner to receive evidence and enter an opinion and award concerning plaintiff's entitlement, if any, to Section 97-29, -30, and/or 31 benefits after 20 April 1998.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff is entitled to total disability benefits from 9 July 1997 through 15 January 1998, at the rate of $252.26 per week. This sum has accrued and shall be pain in a lump sum subject to attorney's fees awarded below.
2. Plaintiff is not entitled to disability benefits during the period from 16 January 1998 through 20 April, 1998.
3. This action is remanded to a deputy commissioner to determine whether plaintiff is entitled to disability benefits after 20 April, 1998.
4. Plaintiff's counsel is entitled to a reasonable attorney's fee in the amount of 25% of the benefits awarded in paragraph 1, above. Defendants shall withhold this sum and make this payment directly to counsel for plaintiff.
5. The parties shall each pay their respective costs.
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER